NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11481


COMMONWEALTH  vs.  MATTHEW W. OVERMYER.



Berkshire.     March 3, 2014. - July 9, 2014.

Present: Ireland, C.J., Cordy, Botsford, Gants, Duffly,
& Lenk, JJ.


Controlled Substances.  Narcotic Drugs.  Constitutional Law,
     Narcotic drugs, Search and seizure, Reasonable suspicion,
     Probable cause.  Probable Cause.  Search and Seizure, Motor
     vehicle, Reasonable suspicion, Probable cause.




Complaint received and sworn to in the Pittsfield Division
of the District Court Department on May 21, 2012.

A pretrial motion to suppress evidence was heard by Jacklyn
M. Connly, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Cordy, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by him to
the Appeals Court.  The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.


John P. Bossé, Assistant District Attorney, for the
Commonwealth.
     Janet H. Pumphrey for the defendant.
     The following submitted briefs for amici curiae:
     Ester J. Horwich & Justin R. Dashner for Committee for
Public Counsel Services.

Steven S. Epstein & Marvin Cable for National Organization for the Reform of Marijuana Laws.

LENK, J.  In Commonwealth v. Cruz, 459 Mass. 459, 472 (2011) (Cruz), we held that, in the wake of the 2008 ballot initiative decriminalizing possession of one ounce or less of marijuana (2008 initiative), "the odor of burnt marijuana alone cannot reasonably provide suspicion of criminal activity."  This case requires us to resolve a question not explicitly answered in Cruz, supra:  whether the smell of unburnt, as opposed to burnt, marijuana suffices to establish probable cause to believe that an automobile contains criminal contraband or evidence of a crime.[1]  Here, where police searched the defendant's vehicle after seizing a "fat bag" of marijuana from the glove compartment, and after perceiving an odor of unburnt marijuana, we hold that such odor, standing alone, does not provide probable cause to search an automobile.  Because it is not clear on this record, however, whether police had probable cause to arrest the defendant for criminal possession of marijuana on the basis of the marijuana seized from the glove compartment, we remand the matter to the District Court for further proceedings on that issue.

_____

[1] We acknowledge the amicus briefs submitted by the Committee for Public Counsel Services and the National Organization for the Reform of Marijuana Law on behalf of the defendant.

1.  Background.  We summarize the facts found by the judge after an evidentiary hearing on the defendant's motion to suppress marijuana found in his vehicle and statements made to police, supplemented by uncontested facts in the record.  See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).  Two Pittsfield police officers testified at the hearing.

On May 19, 2012, at approximately 4:30 P.M., Officers Sean Klink and James McIntyre of the Pittsfield police department responded to the scene of a motor vehicle collision.  They observed that the vehicle operated by the defendant, a Volvo, had rear-ended a minivan.  After seeking to assure the well-being of the occupants of the minivan, the officers turned their attention to the defendant, who was seated at the side of the road.

Both officers noticed a very strong odor of unburnt marijuana near the location of the Volvo, and Klink asked the defendant if any was present in his vehicle.  Acknowledging that there was marijuana in the Volvo, the defendant gave Klink the keys to the glove compartment.  Klink found what he described as a "fat bag" of marijuana, which was "rather large," inside the glove compartment.[2]

---

[2] There was no evidence before the judge as to the actual weight of the marijuana found in the "fat bag."

After retrieving the bag from the glove compartment, the officers still perceived a strong smell of marijuana, and, based on their training and experience,[3] believed that an unspecified amount of marijuana remained present in the Volvo. The officers

---

In cases where the weight of seized marijuana is not immediately evident, we note that the Executive Office of Public Safety and Security has advised that, if

> "portable scales are not available, [police] have the option of taking the suspect's information and releasing him while also instructing him that he will receive something in the mail. When police return to the station, they may weigh the marijuana. If the weight is more than an ounce, the suspect may be summonsed to court on a criminal complaint. If the weight is an ounce or less, a citation may be mailed to the suspect within [fifteen] days of the offense."

Question 2 Law Enforcement Q&A, Executive Office of Public Safety and Security (2014), at http://www.mass.gov/eopss/law-enforce-and-cj/law-enforce/question-2-law-enforcement-q-and-a.html (last viewed July 7, 2014).

[3] Pittsfield police Officer James McIntyre testified that he had been exposed to the odors of both burnt and unburnt marijuana during training at the police academy, and that he had completed two three-week assignments with the Pittsfield police drug enforcement unit during his twenty-five years as a police officer. He also had assisted with at least one dozen arrests involving marijuana, and is familiar with the smell of the substance based on the proximity of his desk at the police station to the drug evidence lockers.

Pittsfield police Officer Sean Klink testified that he had completed drug training at the police academy as well as training with the Pittsfield police department that consisted of "go[ing] inside [the] drug evidence locker with drug detectives and learn[ing] about the different drugs." In his five years as a police officer, Klink had participated in the execution of about ten search warrants involving marijuana and had carried out more than twenty "arrests in general."

did not observe anything else indicating the presence of marijuana.  Klink gave the defendant Miranda warnings before asking whether the vehicle contained additional marijuana.  The defendant denied that it did, but eventually admitted that there was more marijuana in the Volvo after Klink "intimat[ed] that a [canine] unit would be on its way."  Klink later placed the defendant under arrest and took him into custody; the defendant's vehicle was towed to the police station.

At some point,[4] McIntyre located a backpack on the back seat of the vehicle.  The backpack contained two large freezer bags, which in turn contained smaller, individually wrapped packages of marijuana.  A criminal complaint issued against the defendant two days later, charging him with possession of marijuana with intent to distribute, G. L. c. 94C, § 32C (a), and commission of this offense within a school or park zone, G. L. c. 94C, § 32J.

The judge determined that the strong odor of unburnt marijuana initially perceived by police "triggered a suspicion" that more than one ounce was present in the vehicle, such that Klink was warranted in asking the defendant whether he possessed

---

[4] The record is unclear whether the officers searched the back seat of the Volvo before or after the defendant's admission that the vehicle contained more marijuana, or his eventual arrest.  The judge noted that it was "unclear from [the officers'] testimony when the defendant admitted there was more marijuana in relation to when McIntyre went into the car, but it [was] clear [the defendant] was detained further after the marijuana in the glove box was found."

marijuana, and in retrieving the "fat bag" from the glove compartment at the defendant's direction.  Therefore, the judge denied the defendant's motion to suppress as to the "fat bag."

The judge also ruled that, once the defendant turned over the "fat bag" from the glove compartment, the officers were not justified in searching the back seat of the defendant's vehicle. "There [were] no other articulable facts to base a reasonable suspicion that the defendant was engaged in criminal activity, or that there were other drugs present"; the defendant made no suspicious gestures, and there were no other indicia of the sale or manufacturing of marijuana.[5]  Thus, the judge decided that the officers' disbelief of the defendant's denials that there was additional marijuana in the vehicle was a "hunch," invalidating the ensuing search of the back seat of the vehicle.  As a result, she ordered suppressed the bags of marijuana found in the backpack, as well as the defendant's statements to police after the discovery of the backpack.

The single justice allowed the Commonwealth's application for leave to pursue an interlocutory appeal to the Appeals Court, and we transferred the matter to this court on our own motion.

---

[5] The judge made no findings whether the officers reasonably believed that the "fat bag" contained more than one ounce of marijuana.

2.  Discussion.  The Commonwealth argues that the smell of marijuana supported probable cause to search the back seat of the defendant's vehicle, rendering the search proper under the automobile exception to the warrant requirement.[6]  The Commonwealth contends that these circumstances differ from those in Cruz, supra, because that case involved the smell of burnt marijuana, whereas the officers in this case perceived an odor of unburnt marijuana.

Under the automobile exception to the warrant requirement, a warrantless search of an automobile is constitutionally permissible if the Commonwealth proves that officers had probable cause to believe that there was contraband or specific evidence of a crime in the vehicle.  See Commonwealth v. Daniel, 464 Mass. 746, 750-751 (2013); Commonwealth v. Motta, 424 Mass. 117, 122 (1997).  However, the "'ultimate touchstone' of both the Fourth Amendment [to the United States Constitution]and art. 14 [of the Massachusetts Declaration of Rights] is reasonableness," Commonwealth v. Entwistle, 463 Mass. 205, 213 (2012), cert. denied, 133 S. Ct. 945 (2013), quoting Commonwealth v. Townsend, 453 Mass. 413, 425 (2009).  We have

---

[6] Because reasonable suspicion is a less demanding standard than probable cause, see Commonwealth v. Smigliano, 427 Mass. 490, 492 (1998), implicit in the judge's finding that the officers lacked a reasonable suspicion that the defendant was engaged in criminal activity is that they also lacked probable cause to search the vehicle under the automobile exception to the warrant requirement.

determined that "[i]t is unreasonable for the police to spend time conducting warrantless searches for contraband when no specific facts suggest criminality." Cruz, supra at 477. Because the 2008 initiative reclassified possession of one ounce or less of marijuana as a civil violation, and abolished the attendant criminal consequences, we held in Cruz, supra at 469-472, that the odor of burnt marijuana alone no longer constitutes a specific fact suggesting criminality. Accordingly, such an odor alone does not constitute probable cause to believe that a vehicle contains a criminal amount of contraband or specific evidence of a crime, such that the automobile exception to the warrant requirement may be invoked. See Commonwealth v. Daniel, supra at 750-752; Cruz, supra at 475-476.

Here, the judge found that the odor of unburnt marijuana did not justify the officers' search of the back seat of the vehicle. The judge determined that, once the defendant surrendered the "fat bag" of marijuana from the glove compartment, the officers' belief that there was more to be found in the vehicle was merely a "hunch." There was nothing to suggest that the marijuana in the "fat bag" did not itself account for the smell the officers perceived. Although the Commonwealth argues, quoting Commonwealth v. Skea, 18 Mass. App. Ct. 685, 690 n.8 (1984), that "[i]t is widely accepted that the

discovery of some controlled substances gives probable cause to search for additional controlled substances in the vicinity," our decisions since 2008 have rejected that proposition as to marijuana. See Commonwealth v. Pacheco, 464 Mass. 768, 771-772 (2013) (presence of less than one ounce of marijuana in vehicle did not give rise to probable cause to search it for additional marijuana); Commonwealth v. Jackson, 464 Mass. 758, 766 (2013) (observation of defendant with marijuana cigarette did not give rise to probable cause to search person); Commonwealth v. Daniel, supra at 751-752 (defendant's surrender of two small bags of marijuana totaling less than one ounce did not give rise to probable cause to search vehicle);.

Massachusetts cases since 2008 also have recognized the dubious value of judgments about the occurrence of criminal activity based on the smell of burnt marijuana alone, given that such a smell points only to the presence of some marijuana, not necessarily a criminal amount.[7] See Commonwealth v. Pacheco, supra at 771-772; Commonwealth v. Daniel, supra at 750-752; Cruz, supra at 472; Commonwealth v. Fontaine, 84 Mass. App. Ct.

---

[7] General Laws c. 94C, § 32L, provides in relevant part:

"Notwithstanding any general or special law to the contrary, possession of one ounce or less of marihuana shall only be a civil offense, subjecting an offender who is eighteen years of age or older to a civil penalty of one hundred dollars and forfeiture of the marihuana, but not to any other form of criminal or civil punishment or disqualification."

699, 706 (2014). Although the odor of unburnt, rather than burnt, marijuana could be more consistent with the presence of larger quantities, see Cruz, supra at 469 n.15, citing Commonwealth v. MacDonald, 459 Mass. 148, 150-153 (2011), it does not follow that such an odor reliably predicts the presence of a criminal amount of the substance, that is, more than one ounce, as would be necessary to constitute probable cause. See Commonwealth v. Antobenedetto, 366 Mass. 51, 56 n.2 (1974) ("The foundation of probable cause must be specific data, the reliability of which could be judged by a magistrate").

The officers in this case detected what they described as a "strong" or "very strong" smell of unburnt marijuana. However, such characterizations of odors as strong or weak are inherently subjective; what one person believes to be a powerful scent may fail to register as potently for another. See Doty, Wudarski, Marshall, & Hastings, Marijuana Odor Perception: Studies Modeled from Probable Cause Cases, 28 Law & Hum. Behav. 223, 232 (2004) (identifying traits such as gender and age that may influence ability to smell). Moreover, the strength of the odor perceived likely will depend on a range of other factors, such as ambient temperature, the presence of other fragrant substances, and the pungency of the specific strain of marijuana present. See State v. Pollman, 286 Kan. 881, 894 (2008) ("the strength of the smell is subjective and also depends on factors

such as masking agents [chewing gum, mints, tobacco products] and the environment where the odor is detected"); Doty, Wudarski, Marshall, & Hastings, supra at 231-232 (participants in experiment displayed weaker ability to detect odor of immature female marijuana plant as compared to that of mature plant, and ability to discern smell was affected by presence of diesel exhaust fumes; temperature also can influence potency of odor perceived).  As a subjective and variable measure, the strength of a smell is thus at best a dubious means for reliably detecting the presence of a criminal amount of marijuana.

Although it is possible that training may overcome the deficiencies inherent in smell as a gauge of the weight of marijuana present, see Doty, Wudarski, Marshall, & Hastings, supra at 232, there is no evidence that the officers here had undergone specialized training that, if effective, would allow them reliably to discern, by odor, not only the presence and identity of a controlled substance, but also its weight. Indeed, in somewhat related cases that turn on the sense of smell, such as those involving canine alerts and canine tracking evidence, we have required that a sufficient foundation be laid as to the canine's ability before the evidence may be admitted at trial.  See Commonwealth v. Taylor, 426 Mass. 189, 197-198 (1997) (canine tracking evidence properly admitted where appropriate foundation established its reliability);

<u>Commonwealth</u> v. <u>LaPlante</u>, 416 Mass. 433, 440 n.10 (1993) (sufficient foundation for consideration of canine tracking evidence includes qualifications of handlers and canines, their training, and number of successful tracks).  Similarly, Federal courts, including the United States Supreme Court, have required that probable cause determinations based on canine alerts be supported by evidence of the canine's reliability.  See <u>Florida</u> v. <u>Harris</u>, 133 S. Ct. 1050, 1057-1058 (2013) (court can presume that dog's alert provides probable cause to search "[i]f a bona fide organization has certified a dog after testing his reliability in a controlled setting," but defendant must be given opportunity to challenge evidence of dog's reliability); <u>United States</u> v. <u>Owens</u>, 167 F.3d 739, 749 (1st Cir.), cert. denied, 528 U.S. 894 (1999), citing <u>United States</u> v. <u>Race</u>, 529 F.2d 12, 14 (1st Cir. 1976) ("The existence of probable cause based on an alert by a drug dog depends upon the dog's reliability").

In sum, we are not confident, at least on this record, that a human nose can discern reliably the presence of a criminal amount of marijuana, as distinct from an amount subject only to a civil fine.  In the absence of reliability, "a neutral magistrate would not issue a search warrant, and therefore a warrantless search is not justified based solely on the smell of

marijuana," whether burnt or unburnt.  Commonwealth v. Daniel, supra at 751, citing Cruz, supra at 475-476.

The judge correctly determined, therefore, that the odor of unburnt marijuana did not justify the search of the back seat of the defendant's vehicle under the automobile exception to the warrant requirement.  However, she did not specifically address whether the seizure of the "fat bag," if reasonably thought to weigh more than one ounce, would support probable cause to arrest the defendant, thereby providing an independent basis for the warrantless search.  See Commonwealth v. Perkins, 465 Mass. 600, 605 (2013), quoting Arizona v. Gant, 556 U.S. 332, 346 (2009) (police may search automobile incident to arrest of its driver where arrestee "is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest").  In this regard, the judge did not make findings necessary to a determination whether there was probable cause to arrest the defendant for possession of the "fat bag," including whether the officers had a reasonable belief that the "fat bag" contained more than one ounce of marijuana.[8]

3.  Conclusion.  The order allowing the defendant's motion to suppress is vacated.  The case is remanded to the District Court for a determination, after any hearings the judge deems

_____

[8] See note 2, supra.

necessary, whether the officers had probable cause to arrest the defendant on the basis of the marijuana seized from the glove compartment.

<u>So ordered</u>.