Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2016 CO 52**

**No. 16SA92, <u>People v. Zuniga</u>—Probable Cause to Search—Totality of the
Circumstances—Marijuana Odor.**

In this interlocutory appeal, the supreme court reverses the trial court and holds

that the odor of marijuana is relevant to the totality of the circumstances test and can

contribute to a probable cause determination.  Even though possession of one ounce or

less of marijuana is allowed under Colorado law, many marijuana-related activities

remain unlawful, meaning the odor of marijuana can support an inference that a crime

is ongoing.  Under the facts of this case, the court concludes that there was probable

cause to search the vehicle for illegal drugs in light of the two occupants' divergent

stories about their time visiting Colorado, their "extreme" nervousness, the strong odor

of raw marijuana coming from the vehicle, and a drug-sniffing dog's alert.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

### 2016 CO 52

### Supreme Court Case No. 16SA92
*Interlocutory Appeal from the District Court*
Weld County District Court Case No. 15CR1408
Honorable Thomas Quammen, Judge

### Plaintiff–Appellant:

The People of the State of Colorado,

v.

### Defendant–Appellee:

Victor Zuniga.

### Order Reversed
*en banc*
June 27, 2016

**Attorneys for Plaintiff–Appellant:**
Michael J. Rourke, District Attorney, Nineteenth Judicial District
Patrick T. Roche II, Deputy District Attorney
  *Greeley, Colorado*

**Attorneys for Defendant–Appellee:**
Douglas K. Wilson, Public Defender
Jud Lohnes, Deputy Public Defender
  *Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.
**JUSTICE HOOD** dissents.

¶1   In this interlocutory appeal of the trial court's order suppressing evidence obtained as a result of a vehicle search, we consider whether the odor of marijuana can contribute to a finding of probable cause even though, since 2012, possession of one ounce or less of marijuana is allowed under Colorado law. We hold that the odor of marijuana is relevant to the totality of the circumstances test and can contribute to a probable cause determination. Therefore, the trial court erred when it disregarded the odor of marijuana in its probable cause analysis. Under the facts of this case, we conclude that there was probable cause to search the vehicle for illegal drugs in light of the two occupants' divergent stories about their time in Colorado, their "extreme" nervousness, the strong odor of raw marijuana, and a K-9 unit's alert at the rear of the vehicle. We therefore reverse the trial court's order suppressing evidence obtained from the search and remand for proceedings consistent with this opinion.

## I.  Facts and Procedural History

¶2   A Colorado State Trooper on patrol along Interstate 76 in Weld County stopped a Jeep Cherokee with Iowa license plates that was heading eastbound.[1] The Trooper approached the vehicle's open, passenger-side window and quickly noted a "heavy odor" of "raw" (i.e., unburnt) marijuana. The Trooper testified that "the nervousness [of the two men] was to an extreme that [] wasn't normal" when compared to other stops that the Trooper had conducted during his nineteen-year career. For example, the Trooper noted that the driver had beads of sweat on his face, stuttered in response to

---

[1] The trial court found reasonable suspicion for the traffic stop. That determination is not before us in this interlocutory appeal. See infra note 3.

requests, and had shaky hands. The Trooper also stated that Defendant–Appellee Victor Zuniga, who was the passenger in the car, appeared nervous and was "overly nice" as he assisted the driver in retrieving requested documents from the glovebox. The documentation showed that the vehicle was not registered in the driver's name. As a result, the Trooper requested that the driver exit and step behind the vehicle.

¶3 During the ensuing interview, the driver explained that the vehicle was his even though it was registered in his mother's name. As the conversation progressed, the Trooper again noted that the driver was "overly nervous" and would not look the Trooper in the eye, opting instead to look at the surroundings of the traffic stop. The Trooper asked the driver why the two were in Colorado, to which the driver responded that they drove out approximately four days earlier but "didn't go anywhere and didn't do anything" once there. The Trooper testified that he found this suspicious because people normally have "some kind of reason, whether it's business or pleasure," for visiting another city or state. The driver also indicated that they stayed at a hotel in the Denver area, but he could not recall the name of the hotel.

¶4 The Trooper then moved to Zuniga, who was still sitting in the passenger side of the vehicle, and asked him why the two had visited Colorado. Zuniga responded that they drove out approximately two days earlier to visit his grandmother, who was in the hospital due to kidney problems. Zuniga also told the Trooper that he and the driver spent the rest of their time visiting the mountains and walking along the Sixteenth Street Mall in Denver. Zuniga said that they stayed at his grandmother's home after she was released from the hospital, but he could not remember specifically where his

3

grandmother lived in the Denver area. The Trooper testified that during this brief conversation, Zuniga took several moments before responding to each question.

¶5 Based upon the men's inconsistent stories, their extreme nervousness, and the strong odor of raw marijuana, the Trooper was suspicious that criminal activity was ongoing in the vehicle. Accordingly, the Trooper told the two men that he was going to have his K-9 unit, Lobo, conduct a "free air sniff" around the vehicle. Lobo is trained to detect four different narcotic odors—marijuana, cocaine, methamphetamine, and heroin—but his alert to the presence of a narcotic is "general," meaning he is unable to indicate to his handler which particular narcotic he detects. In addition, Lobo is unable to differentiate between different weights or amounts of narcotics, and thus he alerts any time he detects a scent of any of the four narcotics, regardless of the amount.

¶6 Lobo quickly alerted at the rear hatch of the Jeep Cherokee. As a result, the Trooper lifted the rear hatch door and found a large duffel bag, which the driver identified as Zuniga's. The Trooper opened the duffel bag and found approximately one pound of marijuana wrapped in plastic inside. The Trooper then turned his attention to an ice cooler next to the duffel bag. Upon opening the cooler, the Trooper immediately smelled a strong odor of raw marijuana and subsequently found 12.6 ounces of marijuana concentrate[2] under the ice in the cooler.

¶7 The Trooper called Zuniga over and asked him if the marijuana in the duffel bag and the marijuana concentrate in the cooler were his, to which Zuniga responded, "Yes,

---

[2] "'Marijuana concentrate' means hashish, tetrahydrocannabinols, or any alkaloid, salt, derivative, preparation, compound, or mixture, whether natural or synthesized, of tetrahydrocannabinols." § 18-18-102(19), C.R.S. (2015).

4

sir." The Trooper arrested Zuniga, and the People charged him with two counts of possession with intent to manufacture or distribute marijuana or marijuana concentrate, both level three drug felonies. § 18-18-406(2)(b)(I), (III)(C), C.R.S. (2015).

¶8 After he pleaded not guilty, Zuniga filed a motion to suppress, arguing that the seized marijuana was the fruit of an illegal detention and search. In particular, Zuniga argued that (1) the Trooper lacked reasonable suspicion to stop the vehicle in the first place, (2) the prolonged detention of Zuniga was unlawful, and (3) the vehicle search was not supported by probable cause. After hearing the Trooper's testimony and argument from both parties, the trial court rejected Zuniga's first two arguments but agreed with him that the Trooper lacked probable cause to search the vehicle. The trial court therefore granted Zuniga's motion to suppress.

¶9 On the probable cause issue, the trial court first noted the predicament that, because marijuana possession is legal in certain circumstances in Colorado and drug-sniffing dogs are unable to differentiate between legal and illegal amounts of marijuana, "right now, you've got dogs that are alerting on . . . legal substances." Given this fact, the trial court concluded that there was no probable cause to search the vehicle because the Trooper could only speculate about the amount of marijuana he smelled and about the type and amount of narcotic that caused the dog's alert. In the trial court's view, because marijuana possession is legal in certain quantities, the odor of marijuana and the dog's alert could not contribute to a determination that probable cause existed to search for contraband or evidence of a crime.

¶10 This interlocutory appeal followed. See § 16-12-102(2), C.R.S. (2015); C.A.R. 4.1.

5

## II. Interlocutory Jurisdiction

¶11     Under section 16-12-102(2) and C.A.R. 4.1, the People may file an interlocutory appeal to challenge certain types of adverse suppression rulings, including the suppression of evidence obtained from a search that the trial court deemed unlawful. People v. Smith, 254 P.3d 1158, 1160 (Colo. 2011).  Here, the trial court's suppression of physical evidence that the Trooper obtained as a result of the vehicle search falls under the purview of the interlocutory appeal statute and rule.[3]

## III. Analysis

¶12     To determine whether the trial court erred by suppressing the evidence, we first discuss the constitutional protection against unreasonable searches and the corresponding warrant requirement.  Next, we describe the automobile exception to the warrant requirement, which permits the warrantless search of an automobile if there is probable cause to believe that the automobile contains evidence of a crime.  We then outline the totality of the circumstances test used in probable cause analyses.  With that test in mind, we then address the trial court's conclusion that the odor of marijuana cannot contribute to probable cause now that possession of one ounce or less of marijuana is allowed under Colorado law.  We hold that the odor of marijuana is relevant to the totality of the circumstances test and can contribute to a probable cause

---

[3] In his answer brief, Zuniga, in addition to opposing the People on the probable cause issue, challenged some of the trial court's other findings.  We do not address any of those issues, however, because C.A.R. 4.1(a) does not allow a defendant to bring an interlocutory appeal of a trial court decision that favors the prosecution. People v. Gothard, 185 P.3d 180, 183 (Colo. 2008); see also Smith, 254 P.3d at 1160.

6

determination. Given that rule, we conclude that, under the totality of the circumstances here, probable cause existed to search the vehicle, meaning the trial court's suppression order was erroneous.

## A. Standard of Review

¶13 A probable cause determination is a mixed question of law and fact. People v. Coates, 266 P.3d 397, 400 (Colo. 2011). "When reviewing a trial court's suppression order, we give deference to the trial court's findings of fact but review its application of law de novo." People v. Vaughn, 2014 CO 71, ¶ 9, 334 P.3d 226, 229; see also Grassi v. People, 2014 CO 12, ¶ 11, 320 P.3d 332, 335.

## B. The Fourth Amendment and Probable Cause

¶14 People have a constitutional right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7. A warrantless search is presumptively unreasonable and therefore unconstitutional "unless it is supported by probable cause and is justified under one of the narrowly defined exceptions to the warrant requirement." Mendez v. People, 986 P.2d 275, 279 (Colo. 1999). One of those exceptions is the automobile exception, which "allows police officers to conduct a warrantless search of an automobile if they have probable cause to believe that the automobile contains evidence of a crime." People v. Hill, 929 P.2d 735, 739 (Colo. 1996); see also California v. Acevedo, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."). If a warrantless search violates the Fourth Amendment—either because there was no probable cause or because the search did not

7

fall within one of the recognized exceptions to the warrant requirement—then the remedy is suppression of the evidence obtained. People v. Gutierrez, 222 P.3d 925, 941 (Colo. 2009); Mendez, 986 P.2d at 279.

¶15 Here, it is undisputed that the Trooper did not have a warrant to conduct a search of the automobile. Therefore, we must determine whether the Trooper had probable cause to believe that the vehicle contained evidence of a crime to justify his search under the automobile exception.

¶16 "A police officer has probable cause to conduct a search when 'the facts available to [the officer] would warrant a [person] of reasonable caution in the belief' that contraband or evidence of a crime is present." Florida v. Harris, 133 S. Ct. 1050, 1055 (2013) (second alteration in original) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)). As the United States Supreme Court has stressed, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Riley v. California, 134 S. Ct. 2473, 2482 (2014) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). For that reason, probable cause is a commonsense concept that requires judges to consider the totality of the circumstances to determine "whether a fair probability exists that a search of a particular place will reveal contraband or evidence of a crime." Mendez, 986 P.2d at 280. It is not a standard that "lend[s] itself to mathematical certainties" and instead is based on "factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians, act." Id.; see also Illinois v. Gates, 462 U.S. 213, 232 (1983) ("[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a

neat set of legal rules."). In sum, the totality of the circumstances test for probable cause is an "all-things-considered approach" that calls for consideration of any and all facts that a reasonable person would consider relevant to a police officer's belief that contraband or evidence of a crime is present. See Harris, 133 S. Ct. at 1055–56.

¶17     With these principles in mind, we now turn to the role that the odor of marijuana can play in the totality of the circumstances test in light of the fact that possession of one ounce or less of marijuana is now allowed under Colorado law.

## C. Probable Cause and Amendment 64

¶18     Since passage of "Amendment 64" to the Colorado Constitution in 2012, marijuana use, possession, and growth are lawful under Colorado law in certain circumstances. Colo. Const. art. XVIII, § 16, cl. 3. As pertinent here, Amendment 64 states that it is "not unlawful and shall not be an offense under Colorado law" for a person over twenty-one years of age to possess one ounce or less of marijuana. Id. But consistent with this constitutional provision, section 18-18-406(4)–(5) makes it a crime for a person to knowingly possess more than one ounce of marijuana or marijuana concentrate. See also § 18-18-433 ("The provisions of this part 4 do not apply to a person twenty-one years of age or older acting in conformance with section 16 of article XVIII of the state constitution . . . ."). The statute also makes it a crime for those other than licensed marijuana facilities to knowingly possess marijuana or marijuana concentrate with the intent to sell or distribute it, and it classifies each offense under this provision based upon the amount of marijuana involved. § 18-18-406(2)(b)(I), (III).

9

Thus, Colorado law makes certain marijuana-related activities lawful and others unlawful.

¶19 The trial court here found that because possession of one ounce or less of marijuana is allowed under Colorado law, the odor of marijuana cannot contribute to a determination of probable cause. As the trial court observed, "The dog cannot alert based on quantity. And so, he is alerting on illegal substances and legal substances." The trial court consequently concluded that the odor of marijuana could just as likely have been indicative of legal activity as of illegal activity and therefore could not have added to the Trooper's suspicions. See Commonwealth v. Overmyer, 11 N.E.3d 1054, 1058–59 (Mass. 2014) (holding that the odor of unburnt marijuana cannot contribute to probable cause unless the officers are able to discern from the odor that a criminal amount of marijuana is present). As a result, the trial court disregarded the Trooper's detection of a marijuana odor, as well as Lobo's alert, and found that there was no probable cause to search the vehicle under the remaining facts.

¶20 We disagree with this reasoning. As the United States Supreme Court has stated, the totality of the circumstances test for probable cause is an "all-things-considered approach," Harris, 133 S. Ct. at 1055, and its "ultimate touchstone" is reasonableness, Riley, 134 S. Ct. at 2482 (quoting Stuart, 547 U.S. at 403). A possible innocent explanation or lawful alternative may add a level of ambiguity to a fact's probative value in a probable cause determination, but it does not destroy the fact's usefulness outright and require it to be disregarded.

¶21    Indeed, Colorado courts and law enforcement frequently consider non-criminal and legally ambiguous conduct in probable cause analyses, and the possibility of an innocent justification merely affects a fact's weight and persuasiveness, not its inclusion in the analysis. See People v. Pacheco, 175 P.3d 91, 95 (Colo. 2006) ("If only non-criminal activity is corroborated, the question whether probable cause exists focuses on 'the degree of suspicion that attaches to [the] particular types of corroborated non-criminal acts . . . .'" (quoting People v. Leftwich, 869 P.2d 1260, 1268 (Colo. 1994))); People v. McCoy, 870 P.2d 1231, 1237–38 & n.9 (Colo. 1994) (holding that probable cause does not require specific information that a particular crime has been committed, and stating that the possibility of an innocent alternative explanation is merely a factor in the totality of the circumstances test); People v. Atley, 727 P.2d 376, 378 (Colo. 1986) (holding that probable cause existed to search an apartment for psilocybin mushrooms despite the possibility that the mushrooms were lawfully grown); cf. Gates, 462 U.S. at 243 n.13 ("In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts.").[4] Omitting these types of facts from the analysis based on the possibility that they could arise from innocent behavior

---

[4] Cases from other jurisdictions also reaffirm the principle that non-criminal or legally ambiguous facts are germane to the totality of the circumstances test for probable cause. See, e.g., McCoy v. State, 491 P.2d 127, 130 (Alaska 1971) (holding that the possibility that the defendant procured contraband in an innocent manner "do[es] not negate the facts and circumstances within the officers' knowledge which supplied the probable cause basis for their belief that McCoy had committed a felony"); Bennett v. State, 44 S.W.3d 310, 313 (Ark. 2001) (holding that the odor of denatured alcohol, a chemical used in methamphetamine manufacture, is part of the totality of the circumstances).

contravenes the very purpose of the totality of the circumstances test by ignoring the possibility that they could equally give rise to an inference of criminality.

¶22    Mendez helps to illustrate how facts that are ambiguous as to innocence or criminality fit into the totality of the circumstances test. In that case, the police responded to a trespass complaint at a motel and, while there, noticed the "strong odor of burning marijuana" emanating from a room directly across from the elevator. 986 P.2d at 278. We held that the officers' warrantless entry into the motel room fell under the exigent circumstances exception to the warrant requirement and was supported by probable cause that contraband or evidence of criminal activity existed inside. Id. at 280, 283. In so holding, we rejected the defendant's argument that the police officers could not rely upon the odor of burning marijuana in their probable cause determination given that medicinal marijuana use was an affirmative defense to a charge of marijuana possession and the police "could not readily determine whether the marijuana was being used illegally or for medicinal purposes." Id. at 281 n.4. As we reasoned, requiring police to know that certain contraband is being used in an illegal rather than a legal manner "would swallow the rule mandating that absolute certainty is not required before probable cause can be established. In fact, the Constitution has never required an officer to refrain from searching premises under circumstances in which the activity in question could potentially be legal." Id.

¶23    In sum, our precedent is consistent with the principle that, while a possible innocent explanation may impact the weight given to a particular fact in a probable cause determination, it does not wholly eliminate the fact's worth and require it to be

12

disregarded. Applying that principle to the trial court's order here, we note that while Amendment 64 allows possession of one ounce or less of marijuana, a substantial number of other marijuana-related activities remain unlawful under Colorado law. Given that state of affairs, the odor of marijuana is still suggestive of criminal activity. Hence, we hold that the odor of marijuana is relevant to the totality of the circumstances test and can contribute to a probable cause determination. See Harris, 133 S. Ct. at 1058 ("The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test."); see also State v. Senna, 79 A.3d 45, 50–51 (Vt. 2013) ("[W]e conclude that the trial court properly considered the odor of fresh marijuana emanating from defendant's home in assessing probable cause to search his residence. . . . [T]he fact that Vermont has a registry of patients who are exempt from prosecution for possession or cultivation of marijuana does not undermine the significance of the smell of marijuana as an indicator of criminal activity."). The trial court therefore erred when it disregarded the odor of marijuana in its assessment of probable cause.

¶24 Having concluded that the odor of marijuana can properly be considered as part of the totality of the circumstances test for probable cause, we now turn to the facts of this case to determine whether the trial court erred in determining that the Trooper lacked probable cause to search the vehicle.

13

## D. Application

¶25 Based on the record in this case, we conclude that the Trooper had probable cause to search the vehicle because, under the totality of the circumstances, a "fair probability exist[ed] that a search of [the vehicle would] reveal contraband or evidence of a crime." Mendez, 986 P.2d at 280.

¶26 First, Zuniga and the driver gave remarkably disparate accounts of their visit to Colorado. The driver stated that he and Zuniga arrived in Colorado four days prior, stayed in a hotel somewhere in the Denver area, and did nothing at all. By contrast, Zuniga stated that he and the driver arrived in Colorado two days prior, stayed with his grandmother somewhere in the Denver area, and spent their time visiting his ailing grandmother, traveling to the mountains, and walking along the Sixteenth Street Mall in Denver. The vast inconsistencies between the two men's stories lead to a reasonable inference that the two men were attempting to conceal illegal conduct from the Trooper.

¶27 Second, the Trooper testified that Zuniga and his driving companion exhibited "extreme" nervousness. While nervousness is a natural reaction that any driver might have when confronted with law enforcement at a traffic stop, United States v. Wood, 106 F.3d 942, 948 (10th Cir. 1997), the Trooper's testimony here makes it clear that the two men's nervousness in this case was exceptional and suggestive of suspicious activity, see United States v. Simpson, 609 F.3d 1140, 1147–48 (10th Cir. 2010) (holding that nervousness is a common reaction and can be difficult to evaluate but that "[e]xtreme and persistent nervousness . . . 'is entitled to somewhat more weight'" (quoting United States v. West, 219 F.3d 1171, 1179 (10th Cir. 2000))); People v. Morales,

14

935 P.2d 936, 941 n.7 (Colo. 1997) (noting that the United States Supreme Court has found reasonable suspicion of drug trafficking based in part upon nervous behavior (citing Florida v. Royer, 460 U.S. 491, 502 (1983) (plurality opinion))); People v. Olson, 485 P.2d 891, 893 (Colo. 1971) (holding that a suspicious demeanor is relevant to the totality of the circumstances test for probable cause). Thus, the two men's extreme nervousness in this case also leads to a reasonable inference that illegal activity was ongoing during the traffic stop.

¶28 Third, the Trooper's detection of a "heavy odor" of raw marijuana contributed to the Trooper's conclusion that marijuana was in the vehicle, potentially in an illegal amount. As discussed above, the odor of marijuana remains relevant to probable cause determinations and can support an inference that a crime is ongoing even though possession of one ounce or less of marijuana is allowed under Colorado law. Many marijuana-related activities remain illegal in Colorado, meaning the detection of a marijuana odor—particularly a "heavy" odor—still adds to the totality of the circumstances and can contribute to a probable cause determination.

¶29 Finally, Lobo's alert similarly suggested that illegal drugs were present in the vehicle. His alert could have stemmed from the two men's possession of a legal amount of marijuana, but it also could have stemmed from the possession of an illegal amount of marijuana or any amount of cocaine, methamphetamine, or heroin, thus giving rise to an inference of criminality and contributing to the existence of probable cause.

¶30 Armed with the two men's differing stories, their exceptional nervousness, the strong odor of raw marijuana, and Lobo's alert at the rear of the vehicle, the Trooper

15

concluded that a "fair probability exist[ed] that a search of [the vehicle would] reveal contraband or evidence of a crime."[5] Mendez, 986 P.2d at 280. We agree with that determination and hold that the Trooper had probable cause to search the vehicle.[6] The trial court therefore erred in suppressing the evidence obtained from that search.

## IV. Conclusion

¶31 We hold that the odor of marijuana is relevant to the totality of the circumstances test and can contribute to a probable cause determination. Thus, the trial court in Zuniga's case erred when it disregarded the odor of marijuana in its probable cause analysis. Under the totality of the circumstances in this case, the Trooper had probable cause to search the vehicle for illegal drugs. We therefore reverse the trial court's order suppressing evidence obtained from the search and remand for proceedings consistent with this opinion.

**JUSTICE HOOD** dissents.

---

[5] The Trooper also testified about Zuniga's "overly nice" demeanor during the traffic stop. A person's "suspicious demeanor" can be a part of the totality of the circumstances test for probable cause, see Olson, 485 P.2d at 893 ("The combination of the suspicious demeanor of the three occupants of the vehicle and the subsequent odor of marijuana . . . was a sufficient basis upon which to predicate probable cause . . . ."), but under the facts of this case, we do not consider Zuniga's "overly nice" demeanor as supportive of probable cause.

[6] Because we conclude that all of the facts discussed above, together, establish probable cause, we need not and do not reach the People's alternative argument that the dog alert alone establishes probable cause in this case.

JUSTICE HOOD, dissenting.

¶32 Had this suppression issue come to us before Amendment 64, it would have been an easy call. But not today. Today, it is much trickier because the mere odor of marijuana no longer signifies a violation of state law.[1] And while individual circumstances not establishing probable cause sometimes combine to cross that constitutional threshold, I don't believe they do here. In my opinion, this search was unreasonable. Because I fear the majority too quickly draws incriminating inferences from ambiguous facts and overplays the significance of other factors raising reasonable suspicion but not amounting to probable cause, I respectfully dissent.

## I. Warrantless Vehicle Searches

¶33 When a search occurs outside the safeguards of the warrant process, we presume the search is unreasonable, and hence unconstitutional. People v. Vaughn, 2014 CO 71, ¶ 10, 334 P.3d 226, 229 ("Generally speaking, warrantless searches violate constitutional guarantees because they are presumptively unreasonable." (citing People v. Hill, 929 P.2d 735, 739 (Colo. 1996))). "To overcome this presumption, the prosecution has the burden of establishing that the warrantless search is supported by probable cause and is justified under one of the narrowly defined exceptions to the warrant requirement." People v. Winpigler, 8 P.3d 439, 443 (Colo. 1999) (citing People v. Garcia, 752 P.2d 570, 581 (Colo. 1988)); see also People v. Villiard, 679 P.2d 593, 597 (Colo. 1984).

---

[1] As the majority notes, Colorado voters passed Amendment 64 and added to their constitution a section titled, "Personal use and regulation of marijuana." Colo. Const. art. XVIII, § 16. This 2012 change permits possession of up to one ounce of marijuana by people twenty-one years of age and older. Colo. Const. art. XVIII, § 16(3)(a).

1

¶34 As the majority explains, one exception to the warrant requirement concerns automobiles. See maj. op. ¶ 14. I take no issue with the majority's recitation of this exception or its description of the probable cause standard. Instead, I part company with the majority over whether that standard has been met here.

## II. Application and Analysis

¶35 The majority concludes there was probable cause for the Trooper to search Zuniga's luggage because (1) Zuniga and the driver told different stories about their travels in Colorado, (2) Zuniga and the driver were exceptionally nervous, (3) the Trooper smelled a strong odor of raw marijuana, and (4) the narcotics dog, Lobo, alerted. Id. at ¶ 30. While I agree with the majority that some of these facts raise reasonable suspicion, I disagree with its conclusion that together they amount to probable cause.

## A. Conflicting Stories

¶36 The driver and Zuniga related very different accounts of their travels, and the majority is correct that the "vast inconsistencies" in their stories allowed for an inference of criminal activity. Id. at ¶ 26. But I also agree with the majority that the divergent stories alone do not amount to probable cause justifying a search of the vehicle. Therefore, I turn to the other circumstances on which the majority relies.

## B. Nervousness

¶37 The majority discusses how jittery Zuniga and his companion seemed to be. But as any generally law-abiding citizen who's been stopped for a traffic violation will attest, everybody gets nervous when the flashing lights appear. Courts therefore realize

2

"[n]ervousness is of limited value."  United States v. Simpson, 609 F.3d 1140, 1147 (10th Cir. 2010).  "[I]t is common for most citizens, 'whether innocent or guilty — to exhibit signs of nervousness when confronted by a law enforcement officer.'"  Id. (quoting United States v. Wood, 106 F.3d 942, 948 (10th Cir. 1997)); see also People v. Goessl, 526 P.2d 664, 665 (Colo. 1974) ("The People suggest that the defendant's nervous state in the presence of the officer indicates probable cause.  Such a suggestion must be rejected.  It is normal for law-abiding persons, as well as persons guilty of criminal activity, to be nervous when stopped by a policeman for a traffic offense.").  Moreover, "unless the police officer has had significant knowledge of a person, it is difficult, even for a skilled police officer, to evaluate whether a person is acting normally for them or nervously."  Simpson, 609 F.3d at 1147–48.

¶38     Perhaps this explains why the majority repeatedly stresses that both the driver and Zuniga exhibited "extreme" nervousness.  See maj. op. ¶¶ 1–2, 5, 27.  There are plenty of specific manifestations of nervousness in this record — the shaking hands, a sweaty face, the stutter, failure to make eye contact — but the Trooper observed these things in the driver, not Zuniga.  While the record contains generic comments that Zuniga, "also appear[ed] nervous," there is little in the way of particular observations to support that assessment.  And when the Trooper testified "the nervousness of the driver and the passenger" was "to the extreme that it wasn't normal," he pointed to the sweaty face and failure to make eye contact — things he had described seeing from the driver — to make the point.

3

¶39 Big deal, you might say; surely the driver's behavior still goes to whether there is probable cause to search the car under the totality of the circumstances? True enough. But if we are to let common sense guide us, doesn't it make sense that drivers will often appear more nervous than their passengers? After all, the driver is the one on the hook for the ticket where, as here, the initial stop is made for a purported traffic violation. See People v. Crippen, 223 P.3d 114, 117 (Colo. 2010) (probable cause involves "common-sense conclusions about human behavior"). And the evidence of even the driver's "extreme" nervousness in this case isn't so impressive. For example, the Trooper noted the driver's stutter, but there is no evidence the Trooper was familiar with the driver's speech patterns. Thus, in my estimation, this evidence of nervousness is just not that revealing.

## C. The Odor of Marijuana

¶40 The majority concludes the trial court erred by failing to consider the odor of marijuana, see maj. op. ¶ 23, but the trial court's probable cause analysis did address the smell of marijuana. As revealed by the trial court's patient engagement with questions from the prosecutor, the court considered all the information on which the majority relies. It simply did not perceive the odor of marijuana as inherently suspicious and was appropriately cautious about drawing incriminating inferences from ambiguous facts.

4

¶41 Given marijuana's status in this jurisdiction, just smelling marijuana around a person at least twenty-one years old[2] does not provide even a reasonable suspicion of criminal activity. Typically, law enforcement will need reason to believe a suspect possesses more than an ounce to establish criminality under state law. So while I can agree with the majority that the odor of raw marijuana is a circumstance that can "contribute" to a probable cause showing, id., the scent on its own doesn't really tell us anything these days.

¶42 To bolster its conclusion that the scent of marijuana can still contribute to probable cause, the majority looks back in time to Mendez v. People, 986 P.2d 275 (Colo. 1999). Recall that case involved a 1995 warrantless search of a motel room after an officer smelled burning marijuana while standing in the hall. Id. at 278. We credited the scent in establishing probable cause even though the officer did not know if the use of marijuana there complied with Colorado's medical marijuana regime. Id. at 281 & n.4. Of course, Mendez arose in a very different regulatory world in which marijuana was illegal under state law though medicinal use could provide a defense to prosecution in some circumstances. See id.

¶43 Despite the changes wrought by Amendment 64, it is true, as it was true in the time of Mendez, that not all marijuana-related activities are legal in Colorado. But we rested our decision on a common-sense perception that the smell of burning marijuana gave rise "to a very high probability" that a search would reveal contraband or

---

[2] It is reasonable to think the Trooper knew Zuniga was over twenty-one given that he testified to taking Zuniga's identification and running a warrant check that came back negative.

evidence of a crime. Id. at 281. Today, however, unlike in 1995, possession of up to an ounce of marijuana by people twenty-one years of age and older is legal. See Colo. Const. art. XVIII, § 16(3)(a). Therefore, it no longer stands to reason that the same probability of state-law criminality attends the scent of marijuana.

¶44     The majority also looks to State v. Senna, 79 A.3d 45, 50–51 (Vt. 2013), where the Vermont Supreme Court concluded the smell of marijuana continued to have significance as an indicator of criminal activity despite reform of Vermont's marijuana laws. Maj. op. ¶ 23. Reliance on Senna seems misplaced given that registered patients in Vermont were merely granted exemptions from arrest and prosecution for some forms of marijuana possession. See 79 A.3d at 49 ("[T]he law creates a defense to prosecution."). Further, the Vermont court expressly distinguished its laws from the more permissive laws of Massachusetts. Id. That state has decriminalized possession of less than one ounce of marijuana, though possession remains a civil violation. See Commonwealth v. Overmyer, 11 N.E.3d 1054, 1058 (Mass. 2014). Consequently, the Supreme Judicial Court of Massachusetts has held that the smell of burnt marijuana "no longer constitutes a specific fact suggesting criminality," id. (discussing Commonwealth v. Cruz, 945 N.E.2d 899 (Mass. 2011)), and that the smell of unburnt marijuana standing alone does not supply probable cause to search a vehicle, id. at 1055. Colorado has gone further than either Vermont or Massachusetts. For adults twenty-one years and older, possession of up to an ounce of marijuana is not merely decriminalized, it is legal. See Colo. Const. art. XVIII, § 16(3)(a).

¶45 Perhaps because the scent alone is largely meaningless, the majority also contends that "detection of a 'heavy odor' of raw marijuana contributed to the Trooper's conclusion that marijuana was in the vehicle, potentially in an illegal amount." Maj. op. ¶ 28. But this is puzzling because it suggests that a "heavy" smell actually has something to do with weight.

¶46 Of course, the strength of a smell is a subjective determination. See Overmyer, 11 N.E.3d at 1059 (citing study and explaining that smell can be affected by gender, age, and ambient temperature, among other factors). But even if scent intensity could be standardized and made objective ("On a 1 to 10 scale, it smelled like an 8."), nothing here demonstrates that the pungency of a smell relates to the amount of the substance giving off the scent. Even if a direct relationship between smell and drug weight can be established in theory, the record before us won't allow that inference in this case. On the contrary, the Trooper disclaimed any ability to discern from his own sense of smell the weight of marijuana present, and he made clear his dog has no such power either.

¶47 So, even if the odor of marijuana is relevant, how suspicious is it these days? I worry there may be a tendency to let this aroma keep tipping the balance in favor of searches, stops, and arrests despite the decision of the people of Colorado to legalize possession of marijuana in small quantities. Thus, here, I'm still left short of probable cause because there is a conspicuous absence of evidence of an illegal quantity.

## D. The Dog Alert

¶48 Past cases from this court and the United States Supreme Court establish that a dog alert by itself can establish probable cause to support a search, provided the dog's

7

training and experience give sufficient reason to believe the alert is reliable. See

Florida v. Harris, 133 S. Ct. 1050, 1057 (2013); People v. Esparza, 2012 CO 22, ¶ 12,

272 P.3d 367, 370.

¶49  It is revealing that the majority derives probable cause from so many sources

instead of simply resting on the dog alert. The majority is forced to take this route

because this case differs from other dog sniff cases in a critical respect. In cases like

Harris and Esparza, the dogs were trained to alert for contraband and only contraband.[3]

In this case, Lobo is trained to alert for marijuana, cocaine, methamphetamine, and

heroin. Under the laws of this state, one of these substances is legal, if highly regulated.

And as the Trooper testified, Lobo's alert is not drug-specific.

¶50  To conclude as the majority does that the alert "suggested that illegal drugs were

present in the vehicle" goes too far. Maj. op. ¶ 29. The alert did not "suggest" the

---

[3] Relatedly, the assumption that narcotics detection dogs only detect contraband has been critical in past cases holding that dog sniffs are not searches under the Fourth Amendment. The Supreme Court concluded that exposing a person's luggage to a "well-trained narcotics detection dog" is not a search because "the sniff discloses only the presence or absence of narcotics, a contraband item." United States v. Place, 462 U.S. 696, 707 (1983). "[T]he canine sniff is sui generis" because it can only reveal what a person has no right to possess. Id. "[A]ny interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that only reveals the possession of contraband 'compromises no legitimate privacy interest.'" Illinois v. Caballes, 543 U.S. 405, 408 (2005) (quoting United States v. Jacobsen, 466 U.S. 109, 123 (1984)).
     Our cases addressing sniffs as searches rest on similar assumptions that dogs are in effect reliable contraband-detection machines. See Esparza, ¶ 11, 272 P.3d at 370 (declining to find "as a factual and conceptual matter, that the alert of a trained narcotics detection dog can indicate anything more than the presence or absence of contraband"). But see id. at ¶ 6, 272 P.3d at 372 (Hobbs, J., dissenting) (explaining the problem of false positives).
     The issue of whether this sniff was a search is not before us. Like the majority, I decline to resolve it.

8

presence of illegal drugs in the sense that the alert "show[ed] indirectly; impl[ied]; [or] intimate[d]" that illegal drugs were present. Suggest, Webster's New College Dictionary (2005). The alert was consistent with the presence of illegal drugs just as it was consistent with their absence. And, contrary to the argument made by the People below, the fact that Lobo alerts for four substances does not mean there is a 25 percent chance the alert was for marijuana and thus a 75 percent chance the alert was for the other drugs. As the trial court recognized, the dog's alert in this case was highly ambiguous.

¶51 Therefore, I do not find Lobo's cryptic alert to be helpful either. Given the marginal significance of the divergent travel stories, and the insignificance of nervousness and the odor of marijuana, I am not persuaded that those facts somehow throw the dog's ambiguous alert into a more nefarious light.

### E. Totality

¶52 Even if the facts are individually weak, does putting them all together create probable cause? I don't think so. As the trial court observed, "Something was odd. But the fact that something doesn't add up and something is odd does not equal probable cause." Marshaling several peculiarities suggesting a suspect has been up to no good does not provide probable cause that drugs will be found in a particular location. See People v. Leftwich, 869 P.2d 1260, 1265 (Colo. 1994) ("The totality-of-the-circumstances test does not lower the standard for probable cause determinations."). The state constitution may have changed, but it seems our empirical intuitions about marijuana and crime are still catching up. Ask yourself this: would we find probable cause here

9

without our residual preconceptions from the world before Amendment 64? If there were no scent of marijuana, would we say that divergent stories and extreme nervousness amount to probable cause for the government to open your car, start rummaging through your bags, and dump out your cooler? I doubt it. And if not, then how much emphasis are we effectively placing on the odor of marijuana in this case? Too much, I think.

## III. Conclusion

¶53    In our post-Amendment-64 world, the totality of these relatively innocuous circumstances does not a recipe for probable cause make. Therefore, I respectfully dissent.