IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HEATHER JULIANO[1], | § | |
| | § | No. 320, 2019 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID No. 1901018130(K) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: June 16, 2021
Decided: September 10, 2021

Before **SEITZ**, Chief Justice; **VALIHURA, VAUGHN**, **TRAYNOR**, and
**MONTGOMERY-REEVES,** Justices, constituting the Court *en banc*.

Upon appeal from the Family Court of the State of Delaware. **REVERSED.**

Patrick J. Collins, Esquire, COLLINS & ASSOCIATES, Wilmington, Delaware *for
Appellant Heather Juliano*.

John R. Williams, Esquire, DEPARTMENT OF JUSTICE, Dover, Delaware for
*Appellee State of Delaware*.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

**TRAYNOR**, Justice, for the Majority:

After the sport-utility vehicle in which Heather Juliano was a passenger was stopped because of a suspected seat-belt violation, one of the investigating officers detected an odor of marijuana coming from the vehicle. Based on that odor alone, the occupants of the vehicle, including Juliano, were immediately ordered out of the vehicle and placed under arrest. The police searched Juliano at the scene and then transported her to their station where they told her that they intended to perform a strip search, prompting Juliano to admit that she had concealed contraband—marijuana and cocaine—in her pants. Juliano was then escorted to another room where she retrieved and handed over the drugs. Juliano was then charged with several drug offenses.

Before her trial, Juliano moved to suppress the drugs that the police seized from her, claiming, among other things, that her arrest and the ensuing searches were not supported by probable cause. The State responded that the odor of marijuana emanating from the area of the vehicle where Juliano was seated and on her person provided probable cause for Juliano's arrest. And, the State argued, because the arrest was lawful, the searches of Juliano at the scene and at the station were incident to her arrest and hence lawful.

In two separate orders—one following the suppression hearing and the other on remand by this Court of that first order—the Family Court agreed with the State

2

and denied Juliano's motion. In this appeal, Juliano contends that, although the odor of marijuana may support the extension of a traffic stop or serve as a factor contributing to probable cause to search a person or vehicle, it does not, standing alone, authorize a full custodial arrest.

In this opinion, we hold that, under the totality of the circumstances presented by the State in this unusual case, including the vagueness of the officers' description of the marijuana odor, the timing of their detection of that odor, and the absence of any other observations indicative of criminality, Juliano's arrest was unreasonable and therefore violates the Fourth Amendment of the United States Constitution and Article I, Section 6 of the Delaware Constitution. It follows that the evidence obtained following Juliano's unlawful arrest should have been suppressed as fruit of the poisonous tree. This being so, we reverse.

## I.   BACKGROUND

### A.   Juliano's arrest and the searches that followed

Our discussion of the facts surrounding Juliano's arrest draws from our November 2020 opinion, as well as a fresh review of the record and the Family Court's Order on Remand.

On January 29, 2019, Corporal Robert Barrett of the Dover Police Department was on patrol in Dover. Barrett was accompanied by Probation Officer Rick L. Porter as part of the Department's Operation Safe Streets (OSS) program, an

3

"enhanced law enforcement . . . initiative" that pairs adult probation officers with police officers, which, when it was conceived in the late 1990s and early 2000s, "targets high-risk probationers to ensure that they remain in compliance with curfews and other conditions of their probation."[2]   In the current environment, however, the Safe Streets task force engages in a broader range of law enforcement activity and is not limited to the supervision of high risk probationers.  According to Corporal Barrett, for instance, Safe Streets officers target "violent offenders, . . . guns[,] and drugs,"[3] by, among other things, making traffic stops for minor violations and "tak[ing] every traffic stop as far as [they] can."[4]

On the afternoon in question, Corporal Barrett spotted a sport-utility vehicle, driven by Shakyla Soto, leaving an area of Dover known as Capitol Green and noticed that the occupant of the front passenger seat—believed by Barrett at the time to be a Black male in his early twenties[5]—was not wearing a seat belt.  This observation prompted Barrett to pull the SUV over.  In our November 2020 opinion, we described what happened next:

---

[2] Richard J. Harris & John P. O'Connell, *Operation Safe Streets/Governor's Task Force: Review and Impact*, at ii (Dec. 2004), https://cjc.delaware.gov/wp-content/uploads/sites/61/2017/06/oss-gtf-20041207-min.pdf.
[3] App. to Supp. Opening Br. at A44.
[4] *Id*. at A47.
[5] 21 *Del. C*. § 4802(a)(2) provides that "[t]he driver of a motor vehicle shall secure or cause to be secured in a properly adjusted and fastened seat belt system…each occupant of the passenger compartment who is 16 years of age or older."  Had Barrett recognized that the passenger was under the age of 16 when he effected the stop, he would not have had a reasonable basis to believe that a seat-belt violation had occurred.

Barrett approached the SUV on the driver's side, while Porter was on the passenger side. Barrett recognized the passenger as Juliano and noticed that she was putting her seat belt on. Almost immediately after Barrett initiated contact with the driver, he heard Porter say "1015 which [, according to Barrett,] means take . . . everybody into custody." As of that moment, Barrett had not smelled an odor of marijuana or noticed any other evidence of foul play, and he was not sure why Porter was directing him to take all of the car's passengers, including back-seat passengers, Zion Saunders and Keenan Teat, into custody. At the time, Barrett speculated that Porter had detected "an odor of marijuana or a weapon or contraband." Porter later told Barrett that, indeed, it was the odor of marijuana that prompted his instructions.

Three other Dover Police Department officers arrived on the scene in very short order. In fact, one of the officers—James Johnson, the one who took custody of and searched Juliano—arrived on the scene before any of the car's occupants had exited the vehicle.

In response to Porter's "10-15" directive, Barrett took Soto into custody and placed her in handcuffs. Barrett then searched Soto—like Juliano, a female—and found nothing . . . . [A]s Barrett escorted Soto to the rear of the SUV for the purpose of searching her, he "could smell marijuana very strong coming from Ms. [Juliano]."

According to Barrett, all four occupants of the SUV were removed from the vehicle and handcuffed in response to Porter's order. The SUV was then searched, but no contraband was found. The officers then searched each of the vehicle's occupants. Barrett confirmed that these searches went beyond a pat-down for weapons[.]

. . .

One officer searched Teat and found a knotted bag containing crack cocaine in one of his pants pockets. Another officer searched Saunders and found both marijuana and heroin in his jacket pockets. But when Officer Johnson searched Juliano, he found no contraband. He did, however, find $245.00.[6]

---

[6] *Juliano v. State*, 254 A.3d 369, 394 (Del. 2020) (footnotes omitted).

5

Juliano was transported to the Dover Police Department where she was told that "a more thorough search was going to be done by a female and [was] asked if she had anything on her;"[7] rather than consent to the strip search, Juliano admitted that she did. Juliano was then escorted to another room where she retrieved a bag of marijuana and a bag of cocaine from within her pants. The ensuing strip search of Juliano yielded nothing. Juliano was charged with Tier 1 possession of narcotics with an aggravating factor, drug dealing, and possession of marijuana with an aggravating factor.[8]

## B.    Procedural History

Juliano moved the Family Court to suppress "all evidence seized as a result of her arrest and subsequent warrantless search and seizure."[9]    According to Juliano's motion:

> [t]he officers' stop of the vehicle operated by Ms. Soto was not based on reasonable suspicion that a traffic violation or other criminal activity had occurred, and thus not justified. In fact, the officers' stopping of the vehicle and subsequent search was entirely pretextual. Furthermore, the officers' arrest and subsequent search of [Juliano] was not supported by probable cause, and thus not justified. The officers' threat of strip searching a juvenile, without a warrant, was not justified and a violation of her right to privacy.[10]

---

[7] App. to Supp. Opening Br. at A42.
[8] Under 16 *Del. C.* § 47514A, the commission of Title 16 offenses, including possession of marijuana and cocaine, in a vehicle "shall be an 'aggravating factor' within the meaning of the offenses…."
[9] Pet'r's Mot. to Suppress Evid. at 2, *State v.* [*Juliano*], No. 1901018130 (Del. Fam. Ct. May 17, 2019).
[10] *Id.*

After an evidentiary hearing, the Family Court denied Juliano's motion, finding

> that the seat-belt violation justified the stop, rejecting Juliano's argument that the officers' reliance on that violation was an unlawful pretext. The court then observed that once the officers stopped the vehicle, they were justified in ordering the driver and occupants out of the vehicle. From there, the court focused on the "independent facts" (odor of marijuana, familiarity with Juliano's criminal history, the officer's experience with adults handing off drugs to juveniles, and the drugs found on the person of the back-seat passengers) that, in the court's view, justified the search of Juliano's person. Missing from the court's analysis though was any discussion of whether the facts that arguably justified a search of Juliano's person at the scene also justified her arrest and transportation to police headquarters for a strip search.[11]

At Juliano's trial, the prosecution presented two witnesses—Corporal Barrett and Heather Moody, the forensic chemist who tested the substance Juliano turned over to the police after she was arrested. The Court adjudicated Juliano delinquent on all three charges—aggravated possession of cocaine, drug dealing, and aggravated possession of marijuana.

Juliano appealed her adjudication of delinquency to this Court, focusing her challenge to the lawfulness of the officers' search of her person on the pretextual nature of the antecedent motor vehicle stop. She also argued that, once the police suspected a marijuana offense, they were required to consider the possibility that

---

[11] *Juliano*, 254 A.3d at 376.

Juliano could have been in lawful possession of marijuana under the Delaware Medical Marijuana Act.

In a November 12, 2020 opinion, we rejected both of Juliano's appellate claims, but remanded the matter to the Family Court "for a more complete statement of the factual and legal basis . . . for the court's conclusion [in its initial order] that 'the search of [Juliano's] person was supported by probable cause[] and that [Juliano's] . . . arrest . . . was proper.'"[12]  The Family Court provided that statement in its December 31, 2020 Order on Remand.

## C.    The Family Court's Order on Remand

In its Order on Remand, the Family Court attempted to clarify the sequence of events, including which officers smelled the odor of marijuana, when they smelled it, and the source of the odor.  The court observed, for instance, that "Officer Barrett approached the driver side of the vehicle, spoke with the driver, and heard [Probation Officer] Porter say, '10-15,' by which he understood that they would take everyone into custody.  Officer Barrett ordered everyone out of the vehicle and, at that point, smelled the odor of marijuana."[13]  The court also noted that "Officer Johnson testified that he noted the smell of marijuana emanating from the vehicle as he

---

[12] *Id.* at 393.
[13] App. to Supp. Opening Br. at A297–98.

approached the front passenger area where [Juliano] sat, before the occupants exited the vehicle."[14]

In its more specific findings, the Family Court determined that

when Respondent was placed in handcuffs upon her exit from the vehicle, she was placed under arrest. Officer Johnson perceived the smell of marijuana emanating from the vehicle and from the place where Respondent sat. Probation Officer Porter also perceived the smell of marijuana from the vehicle and the place where Respondent sat and reported that observation to Officer Barratt [*sic*]. Officer Barrett testified that he recognized a strong smell of marijuana emanating from Respondent's person. Those facts constitute probable cause that she had engaged in criminal activity related to the possession of marijuana, supporting the arrest.[15]

Two aspects of these findings are worthy of preliminary comment. First, the statement that "Probation Officer Porter also perceived the smell of marijuana from the vehicle and the place where [Juliano] sat and reported that observation to Officer [Barrett]"[16] is incomplete and, in one important respect, misstates the record. It is incomplete because it does not mention that Porter's comment to Barrett about the smell of marijuana was made *after* the four occupants of the vehicle had been arrested.[17] And the reference to Porter's reporting the source of the odor as "the vehicle and . . . the place where [Juliano] sat"[18] is not supported by the suppression-

---

[14] *Id*. at A298.
[15] *Id*. at A299.
[16] *Id.*
[17] *Id*. at A38.
[18] *Id*. at A299.

hearing record.  The sum total of Barrett's response when asked if he eventually asked Porter why he issued the order to arrest the vehicle's occupants was:  "Yes. He told me he could smell marijuana."[19]

Our second preliminary observation regarding these factual findings, the relevance of which we will discuss later, is that the court's probable-cause determination is vague.  Specifically, its use of the past-perfect tense—"probable cause that [Juliano] *had engaged* in criminal activity related to the possession of marijuana"[20]—leaves us wondering whether the court believed that the odor of marijuana was indicative of marijuana possession or consumption earlier that day outside the arresting officer's presence.

## II.    STANDARD OF REVIEW

The Family Court's determination that the police had probable cause to arrest Juliano involves a mixed question of law and fact.[21]  We review the trial court's factual findings under a deferential standard that asks whether there was sufficient evidence to support those findings and whether the findings were the result of a logical and orderly deductive process.[22]  Whether the established facts support the

---

[19] *Id*. at A38.
[20] *Id*. at A299 (emphasis added).
[21] *Downs v. State*, 570 A.2d 1142, 1144 (Del. 1990).
[22] *Id*.

trial court's probable-cause determination is a question of law subject to *de novo* review.[23]

## III. ANALYSIS

### A. Juliano's arrest was based solely on the odor of marijuana

It is undisputed that Juliano was subjected to a warrantless search of her person at the scene—a search that went beyond a protective frisk for weapons—and that she was threatened with a warrantless strip search at the police station before she relinquished possession of the contraband that was in her pants. The State bears the burden of proof on a motion to suppress evidence seized during these searches;[24] it must prove by a preponderance of the evidence that the searches "had a particularized and objective basis."[25]

"Although a warrantless seizure is presumed unreasonable under the Fourth Amendment, this presumption may be rebutted by showing that a specific exception to the warrant requirement applies."[26] The State claims here that it rebutted this

---

[23] *Lopez v. State*, 861 A.2d 1245, 1248 (Del. 2004) (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

[24] *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001).

[25] *Bradley v. State*, 976 A.2d 170, 2009 WL 2244455, at *3 (Del. July 27, 2009) (TABLE) ("[T]he totality of the circumstances must indicate that the detaining officer had a particularized and objective basis for suspecting legal wrongdoing." (alterations omitted) (quoting *Sierra v. State*, 958 A.2d 825, 828 (Del. 2008))); *Guererri v. State*, 922 A.2d 403, 406 (Del. 2007) (applying the "preponderance of the evidence" standard of proof to the showing required to establish the legality of a warrantless search under the emergency doctrine); *see also State v. DuBose*, 2016 WL 1590583, at *3 (Del. Super. Ct. Apr. 18, 2016) ("The burden of proof on a motion to suppress is proof by a preponderance of the evidence."), *aff'd*, 152 A.3d 582, 2016 WL 7212307 (Del. Dec. 12, 2016) (TABLE).

[26] *Williams v. State*, 962 A.2d 210, 216 (Del. 2008).

11

presumption and carried its burden by showing that Juliano's arrest was lawful and that the ensuing searches were incident to that arrest.

To be sure, the exception that authorizes a warrantless search of a person who has been lawfully arrested has long been recognized by the United States Supreme Court[27] and this Court.[28] Juliano's challenge here, however, is not to the existence of this well-recognized exception to the warrant requirement; rather, she claims that the condition precedent to the application of the exception—the lawfulness of her arrest—was not met because the police did not have sufficient probable cause to arrest her immediately following the traffic stop.

Conceding, as it must, that the "search incident" exception may only be triggered by a lawful arrest, the State responds in two seemingly inconsistent ways. In its supplemental answering brief, the State first posits that "[t]he odor of marijuana in [Soto's] motor vehicle, coupled with the odor of marijuana on the front passenger seat where Juliano was seated[] and on . . . her person was sufficient probable cause to take Juliano into police custody."[29] Hence, according to the State, "[t]he searches of Juliano at the scene of the motor vehicle stop and at the Dover

---

[27] *Chimel v. California*, 395 U.S. 752, 762–63 (1960) ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.").

[28] *See, e.g.*, *Traylor v. State*, 458 A.2d 1170, 1173 (Del. 1983).

[29] Supp. Answering Br. at 3.

12

Police Station were incident to her arrest and lawful."[30] These statements, taken together, concede that the searches followed Juliano's arrest at the scene.

Yet the State argues later that, in assessing the officers' probable cause for arresting Juliano, we should consider evidence seized from Juliano and the other occupants of the vehicle, claiming that

> [t]he evidence in Juliano's case—the distinct odor of marijuana emanating from different locations within the vehicle, the officer's knowledge of Juliano's criminal history, the money found in her pocket, the drugs found in the possession of the back seat passengers[] [—] provided sufficient probable cause, under the totality of the circumstances, to take Juliano into custody and then to search her incident to this arrest.[31]

For her part, Juliano contends that when Probation Officer Porter gave his "10-15" command to the police officers, she was immediately removed from the car and placed in handcuffs. This, according to Juliano was the moment of her arrest, and it was based on nothing more than the odor of marijuana.

Based on our review of the record and the Family Court's Order on Remand, we resolve the apparent tension between the State's and Juliano's understanding of the facts in Juliano's favor. As mentioned above, the Family Court found that, after Porter gave his command, "[Corporal] Barrett ordered everyone out of the vehicle and, at that point, smelled the odor of marijuana . . . . After the vehicle occupants

---

[30] *Id.*

[31] *Id.* at 18.

were directed to exit the vehicle[,] they were each placed under arrest."[32]  Although there is a lack of clarity in the suppression-hearing testimony regarding when the various officers noticed the odor of marijuana in relation to the arrests, one thing is crystal clear: the searches of the vehicle's occupants, including Juliano, were conducted after the arrests were made.  It follows that, in our determination of whether Juliano's arrest was supported by probable cause, consideration of the fruits of the searches conducted at the scene of the traffic stop is inappropriate.  We therefore turn our attention to whether Juliano's warrantless arrest, based solely on the odor of marijuana, was supported by probable cause.

**B.    Warrantless arrests are governed by 11 *Del. C.* § 1904[33]**

At common law, a peace officer was authorized to make a warrantless arrest for a felony whenever the officer had "reasonable grounds to believe" that a felony

---

[32] App. to Supp. Opening Br. at A297–98.

[33] Our colleague in dissent observes—correctly—that Juliano "[did] not [make] any argument based on this statute in the Family Court or this Court . . . . [] [and that] [t]he State has not had a fair opportunity to address this issue."  Dissent at 33 (Vaughn, J.dissenting).  We note, however, that from the outset, Juliano has challenged the probable cause for her arrest.  And when, at oral argument, the Court questioned the State's attorney about § 1904's requirements, he readily acknowledged that warrantless misdemeanor arrests must be supported by reasonable ground to believe, i.e., probable cause, that the person to be arrested has committed the misdemeanor in the officer's presence:

> THE COURT:  Do you take issue with the notion that for a warrantless arrest to be made for a misdemeanor the offense must be committed in the officer's presence?

> THE STATE:  No.  I think that's what the statute says..  I think it's 1904.

Oral argument at 24:41–53, *Juliano v. State*, No. 320, 2019 (Del. June 16, 2021); *see also* n.72.

had been committed by the person to be arrested.[34]   A warrant was required, however, for misdemeanor arrests "except when a breach of peace occurred in the presence of the arresting officer."[35]  But ever since the Uniform Arrest Act  (the "Act") was enacted in Delaware in 1951, the law of arrest has been regulated by statute and "whatever may have been the rule at common law . . . is no longer material."[36]

Under the current version of the Act, Delaware law enforcement officers are authorized to make a warrantless arrest when they have "reasonable ground to believe that the person to be arrested has committed a felony"[37] or, as is relevant to this case, "has committed a misdemeanor . . . [i]n the officer's presence."[38]  Because suspicion alone will not support a warrantless arrest, "this statute can only pass

---

[34] 3 Wayne R. LaFave, *Search & Seizure:  A Treatise on the Fourth Amendment* § 5.1(b) (6th ed. 2020).

[35] *Id.*

[36] *State v. Holland*, 189 A.2d 79, 82 (Del. Super. Ct. 1963), *aff'd*, 194 A.2d 698 (Del. 1963); *see also Cannon v. State*, 168 A.2d 108, 110 (Del. 1961) (noting that the Uniform Arrest Act was adopted in Delaware in 1951).

[37] 11 *Del. C.* § 1904(b)(1).

[38] 11 *Del. C.* § 1904(a)(1).  To be clear, Sections 1904(a)(2)-(7) allow a police officer, under certain circumstances, to arrest without a warrant for a misdemeanor committed "[o]ut of the officer's presence," subject to the probable cause requirement.  None of those circumstances (out-of-state misdemeanor upon the request of a law-enforcement officer of the state where the offense was committed; shoplifting where a store employee observed the activity; misdemeanors involving physical injury or the threat thereof or illegal or attempted sexual contact; violations of Family Court protective orders; misdemeanors occurring on school property; and underage gambling misdemeanors) are present here.

constitutional muster if 'reasonable ground to believe' is construed to mean probable cause."[39]

Notably, the Act does not authorize a warrantless arrest for a civil violation; to the contrary, Section 1901 defines "arrest" as "the taking of a person into custody in order that the person may be forthcoming to answer *for the commission of a crime*."[40]

## C.   The probable cause requirement

The United States Supreme Court has cautioned that probable cause is a "fluid concept[] that takes [its] substantive content from the particular contexts in which [it is] being assessed."[41]  As this Court observed over a quarter of a century ago,

> [p]robable cause is an elusive concept which avoids precise definition.  It lies somewhere between suspicion and sufficient evidence to convict.  To establish probable cause, the police are only required to present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a crime.  A finding of probable cause does not require the police to uncover information sufficient to prove a suspect's guilt beyond a reasonable doubt or even to prove that guilt is more likely than not.[42]

We look to the objective facts available to the arresting officer, not his subjective thoughts, in determining whether he had probable cause to arrest

---

[39] *Thompson v. State*, 539 A.2d 1052, 1055 (Del. 1988).
[40] 11 *Del. C.* § 1901(1) (emphasis added).
[41] *Ornelas*, 517 U.S. at 696 (citations omitted).
[42] *Jackson v. State*, 643 A.2d 1360, 1365 (Del. 1994) (internal quotations marks, citations, and alterations omitted), *cert. denied*, 513 U.S. 1136 (1995).

16

Juliano.[43]  But the facts and circumstances that justify the belief that a crime has been committed such that a warrantless arrest is authorized must be "within [the] arresting officer's knowledge and of which they had reasonable trustworthy information."[44]  Thus, though the test is objective, it focuses on the facts known to the officer at the time of the challenged arrest.

### D.  The 2015 decriminalization of possession of personal-use quantities of marijuana

The Act's limitation of warrantless arrests to "crimes" is important in light of the Delaware General Assembly's decriminalization in 2015 of personal-use quantities of marijuana.  In 2015, the Delaware General Assembly determined "that it [was] in the best interest of the people of this State to provide an alternative to incarceration for marijuana possession for personal use."[45]  It therefore amended 16 *Del. C.* §§ 4701 and 4764 and decriminalized the possession of "personal use quantit[ies]—defined as "one ounce or less"[46]—for persons 18 years of age or older.[47] Possession of personal-use quantities of marijuana subjected adults to a civil

---

[43] *Stafford v. State*, 59 A.3d 1223, 1228–29 (Del. 2012) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (noting that courts determine whether probable cause exists based on the facts "viewed from the standpoint of an objectively reasonable police officer")).

[44] *Tolson v. State*, 900 A.2d 639, 643 (Del. 2006) (alteration omitted) (quoting *Draper v. United States*, 358 U.S. 307, 313 (1959)).

[45] 2015 Delaware Laws Ch. 38 (H.B. 39).

[46] 16 *Del. C.* § 4701(36).

[47] 2015 Delaware Laws Ch. 38 (H.B. 39); 16 *Del. C.* § 4764.

penalty of $100 plus assessments. Use or consumption of marijuana by an adult in a moving vehicle was an unclassified misdemeanor.

Any person 18 years of age or older, but under 21 years of age, who possessed a personal-use quantity of marijuana was, under the 2015 amendments, subject to a civil penalty of $100 for a first offense, "but guilty of an unclassified misdemeanor and fined $100 for a second or subsequent offense."[48] For those under the age of 18, however, possession of personal-use quantities of marijuana remained a misdemeanor—an unclassified misdemeanor if there were no aggravating factors and a class B misdemeanor if aggravating factors were present. And intentional consumption or use of marijuana "in an area accessible to the public or in a moving vehicle"[49] also remained a misdemeanor, regardless of the user's age.

In 2019, the General Assembly repealed the portion of Section 4764 that classified possession of personal-use quantities of marijuana by persons under the age of 18 as a misdemeanor and, since that repeal, any person, regardless of age who knowingly or intentionally possesses, consumes or uses a personal-use quantity of

---

[48] 16 *Del. C.* § 4764(c) (2015). This provision was amended in July 2019. 2019 Del. Laws Ch. 182 (S.B. 45). Since that time, any person under the age of 21 who violates Section 4764 by possessing a personal-use quantity of marijuana "must be assessed a civil penalty quantity of $100 for a first violation . . . and a civil penalty of not less than $200 nor more than $500 for a second violation . . . and is guilty of an unclassified misdemeanor and must be fined $100 for a third or subsequent offense." 16 *Del. C.* § 4764(c)(3).
[49] 16 *Del. C.* § 4764(d).

18

marijuana is subject to a civil penalty for a first offense.[50]  Juliano's arrest occurred

after the 2015 decriminalization, but before the September 2019 amendments.

**E.       The legal significance of the odor of marijuana**

As a general matter, "a trained and experienced police officer can develop a

justifiable suspicion when an untrained lay person might not.  This frequently comes

into play when an officer relies upon his sense of smell in suspecting that an illegal

substance is present."[51]  But we have also recognized that the weight that should be

given to the detection of an odor in the probable cause context is not without limits.

For example, we have held that the odor of alcohol on a driver's breath, coupled with

a traffic violation, without more, do not constitute probable cause to arrest the driver

for a DUI offense.[52]

For its part, the State points to decisions from this Court holding that, even

after the General Assembly decriminalized the possession of a personal-use

quantity—one ounce or less—of marijuana, the odor of marijuana can be relevant to

probable-cause determinations.  Yet the cases the State cites in support of its claim

that the odor of marijuana alone justifies a full custodial arrest either predate

decriminalization or are based on factual scenarios that are fundamentally different

than the facts surrounding Juliano's arrest.

---

[50] *See supra* note 46.
[51] *Houston v. State*, 251 A.3d 102, 114 (Del. 2021).
[52] *Lefebore v. State*, 19 A.3d 287, 293 (Del. 2011).

19

*Chisholm v. State*,[53] *Fowler v. State*,[54] and *Jenkins v. State*,[55] all involved offenses occurring well before the 2015 decriminalization of possession of an ounce or less of marijuana. Each of these cases involved motor vehicle searches,[56] and in each there were factors beyond the odor of marijuana contributing to the officers' suspicions. Likewise, in the three post-decriminalization cases cited by the State—*Valentine v. State*,[57] *State v. Terry*,[58] and *Law v. State*,[59]—we considered the existence of facts other than the odor of marijuana in our probable cause assessments. And each of those cases involved a search of a motor vehicle, and in each the search preceded the defendant's arrest.[60] Simply put, the authority the State has cited does not support its contention that the odor of marijuana, and nothing more, justifies a full custodial arrest for marijuana possession thus clearing the way

---

[53] 988 A.2d 937, 2010 WL 424241 (Del. Feb. 4, 2010) (TABLE).

[54] 148 A.3d 1170, 2016 WL 5853434 (Del. Sept. 29, 2016) (TABLE). Although this Court's order was entered in 2016, Fowler's arrest was in 2012.

[55] 970 A.2d 154 (Del. 2009).

[56] To be sure, Jenkins also challenged a strip search at the police station. That search occurred after the police had already found marijuana and drug paraphernalia in Jenkins' car.

[57] 207 A.3d 166, 2019 WL 1178765, at *2 (Del. Mar. 12, 2018) (TABLE) (considering the fact that Valentine's car was traveling 32 miles per hour above the speed limit and the time of day).

[58] 227 A.3d 555, 2020 WL 1646775, at *1 (Del. Apr. 2, 2020) (TABLE) (considering the fact that police witnessed Terry's vehicle stop on the side of the road to conduct a hand-to-hand transaction).

[59] 185 A.3d 692, 2018 WL 2024868, at *2 (Del. Apr. 30, 2018) (TABLE) as corrected (May 17, 2018) (considering the fact that, during roadside background check, police learned that there were two outstanding capiases for Law's arrest).

[60] As we have noted, "[p]robable cause to search and probable cause to arrest are not fungible legal concepts, and each involves a distinctly separate inquiry." *Dorsey v. State*, 761 A.2d 807, 812 (Del. 2000). Because Juliano has not challenged the search of Soto's SUV, we need not decide whether the odor of marijuana provided sufficient probable cause for that search.

for a strip search incident to that arrest to determine if the officer's suspicion is well-founded.

> **F.** **Juliano's suspected "criminal activity related to the possession of marijuana"**

The Family Court, as we have noted, found that the strong odor of marijuana "emanating from the vehicle and from the place where [Juliano] sat . . . constitute[d] probable cause that she engaged in criminal activity related to the possession of marijuana."[61] We first, then, must identify the crimes that an objectively reasonable police officer might suspect to a fair probability Juliano had committed based solely on the odor of marijuana. Arguably, there were five such crimes when Juliano was arrested in January 2019: driving under the influence of marijuana;[62] possession of marijuana by a person under the age of 18;[63] possession of more than an ounce of marijuana by a person 18 years of age or older;[64] use or consumption of marijuana in an area accessible to the public or in a moving vehicle;[65] and manufacturing, delivering, or possessing with intent to deliver marijuana.[66]

---

[61] App. to Supp. Opening Br. at A299.
[62] 21 *Del. C.* § 4177(a).
[63] 16 *Del. C.* § 4764(a) (2015).
[64] 16 *Del. C.* § 4764(d) (2015).
[65] 16 *Del. C.* § 4764(b).
[66] 16 *Del. C.* § 4754.

### 1. No evidence of DUI or drug dealing

It is undisputed that Juliano was not driving when the police stopped Soto's SUV. And neither Corporal Barrett nor Officer Johnson—the prosecution's only suppression-hearing witnesses—testified that the odor of marijuana suggested to them that Juliano was a drug dealer. Thus, three possible crimes remain in play: underage possession of marijuana; the use or consumption of marijuana in a moving vehicle; and possession of more than an ounce of marijuana by a person 18 years of age or older.

### 2. Marijuana use or consumption in a moving vehicle

Leaving the consideration of Juliano's age aside for the moment, we first address whether the odor of marijuana emanating "from the vehicle and from the place where [Juliano] sat"[67] established a fair probability, when viewed from the standpoint of an objectively reasonable officer, that Juliano had intentionally used or consumed marijuana in the vehicle as it was moving. Our answer is that it did not.

Here, we do well to parse the officers' suppression-hearing testimony balancing the relevant details that were included in that testimony against those that were missing. As for the included detail, the officers said that the odor of marijuana was strong and that it emanated from the vehicle, including from the front passenger

---

[67] App. to Supp. Opening Br. at A299.

seat where Juliano had been sitting. Beyond that, however, lies a yawning gap in the officers' testimony. We cannot tell, for instance, whether the odor emanated from Juliano's clothing or from her breath. We do not know whether the odor was of raw or burnt marijuana. As far as we can tell, neither Juliano nor any of the other occupants appeared to be under the influence of marijuana or had bloodshot eyes. None of the occupants exhibited nervous or unusual behavior; indeed, the alacrity with which they were placed under arrest precluded the evaluation of the occupants', including Juliano's, demeanor. The absence of these telltale signs of recent consumption leads us to conclude that the police, in this instance, acted precipitously and could not reasonably have suspected to a fair probability that Juliano had consumed marijuana in a moving vehicle.

What is more, use or consumption of marijuana in a moving vehicle was, when Juliano was arrested, a misdemeanor.[68] And it is clear that, if Juliano had used or consumed marijuana on the date in question, she did not do so in the arresting officer's presence and, therefore, an arrest without a warrant was not authorized under Section 1904.

---

[68] At the time, possession, use, or consumption of marijuana by a person under the age of 18 was an unclassified misdemeanor, but, if the offense occurred in a vehicle—an aggravating factor under 16 *Del. C.* § 4715A—it was a class B misdemeanor. 16 *Del. C.* § 4764(a) and (b).

23

### 3. *Possession of marijuana and consideration of Juliano's age*

Because, as we have discussed above, at the time of Juliano's arrest, Section 4764's treatment of the possession of marijuana was fundamentally different for juveniles than for adults—for juveniles the possession of marijuana was a misdemeanor crime, but for adults, if the possession was of one ounce or less, it was not a crime—we must determine the effect of Juliano's status as a juvenile on our analysis. If the officers—again, before they arrested Juliano—were acting with knowledge of her juvenile status, then we must determine whether the odor of marijuana was sufficient to produce a fair likelihood that Juliano was—then and there, while "in the officer's presence"—in possession of any quantity of marijuana. If the arresting officers were unaware of Juliano's age at the moment of arrest, then our probable cause analysis shifts to whether the odor of marijuana described by the officers produced a fair likelihood that Juliano possessed more than an ounce of marijuana. This is because possession of an ounce or less was not at the time of Juliano's arrest—and still is not—a crime for which a warrantless arrest of a person 18 years of age or older was authorized.

Before addressing this distinction, we note that the Family Court did not consider the potential relevance of Juliano's age and the 2015 decriminalization in its Order on Remand. Nor, as previously mentioned, did the court make a specific

finding that the act of marijuana possession of which Juliano was suspected occurred in the presence of the arresting officers.

A careful review of the record does not support the conclusion that the arresting officers knew of Juliano's status as a person under the age of 18 when they placed her under arrest. There is nothing in the record suggesting that Probation Officer Porter knew that any of the occupants of Soto's vehicle was under the age of 18 when he directed that all of them be taken into custody. The testimony of Corporal Barrett and Officer Johnson is, admittedly, more ambiguous.

Corporal Barrett, whose decision to stop Soto's SUV was based on his belief that the person who turned out to be Juliano was a Black male in his "[e]arly 20s,"[69] testified that, as he approached the vehicle, he "actually recognized [its occupants] and knew who it was [*sic*]."[70] His familiarity with Juliano appears to have been based on his prior arrest of her. But his testimony is silent as to his understanding of Juliano's age at the time of her arrest. To be sure, Barrett eventually testified that Juliano was 15 years of age at the time of her arrest but that testimony related to his

---

[69] *Id.* at A36.

[70] *Id.* The State, invoking the "collective knowledge" doctrine, *see Gordon v. State*, 245 A.3d 499, 511–12 (Del. 2012), contends that the Family Court properly considered Corporal Barrett's observations in its probable-cause assessment. In light of Probation Officer Porter's near-immediate command to arrest the vehicle's occupants and the absence of any pre-arrest communication between Barrett and Officer Johnson, it is debatable whether Barrett's observations should be considered. That said, because Barrett's observations were essentially duplicative of what Johnson observed and are not outcome-determinative, we summarize them here.

25

interaction with her and an attempt to contact Juliano's parents while back at Dover police station, well after Juliano's arrest.

Like Corporal Barrett, Officer Johnson testified that he recognized Juliano at the scene and was familiar with her criminal history. And like Barrett, Johnson made a passing reference to Juliano's status as a juvenile but only in relation to his post-arrest activity.[71]

Keeping in mind that our probable-cause analysis hinges on the facts known to the arresting officer at the time of arrest, we ask: are these fleeting references to Juliano's age at the time of her arrest sufficient to establish by a preponderance of the evidence that any of the officers at the scene were cognizant of Juliano's age *before* she was arrested? We think not.

In the first place, it is abundantly clear that the officer who made the decision to arrest—Probation Officer Porter—was unaware of Juliano's age. It is equally certain, moreover, that none of the officers viewed the ages of the Soto vehicle's occupants as relevant to whether they had probable cause to believe a crime had been committed. We base this conclusion on the immediate arrest of the other three occupants of the vehicle, none of whom were juveniles. All three were arrested

---

[71] Although Barrett acknowledged the search at the scene of all the arrestees was a "full scale search," App. to Supp. Opening Br. at A52, when discussing his search of Juliano at the scene, Johnson said that he could "not really go in-depth because it's a female, also a juvenile." *Id*. at A76.

26

without consideration of the probability the marijuana odor emanating from them was not indicative of a crime, but merely a civil violation. When we consider those facts, along with the absence of clear testimony from any of the law enforcement participants in Juliano's arrest that they were aware of Juliano's age until after she was arrested, we conclude that the State did not carry its burden of proof on this critical fact. Therefore, we conclude that when Juliano was ordered out of Soto's SUV and placed under arrest, the arresting officers did not have a reasonable ground to suspect that Juliano was guilty of underage possession of marijuana.

So that leaves possession of more than one ounce of marijuana as the last crime standing in our search for a crime that the arresting officers might reasonably have suspected that Juliano was committing. Yet there is no testimony in the record from which a court might reasonably infer that the police officers concluded—or even suspected—that Juliano possessed more than an ounce of marijuana.[72] Moreover, at oral argument, the State suggested that the most viable explanation for the odor of marijuana emanating from Juliano was not that she was currently in

---

[72] Certain of our sister states have recognized that, under a statutory regime that makes the possession of marijuana under a certain quantity a civil violation and not a crime, warrantless searches and arrests for marijuana possession must be supported by probable cause—a fair probability—that the suspected individual possessed an amount of marijuana that exceeds the threshold quantity, that is "a criminal amount of marijuana." *Pacheco v. State*, 214 A.3d 505, 518 (Md. 2019); *see also Massachusetts v. Overmyer*, 11 N.E.3d 1054, 1059 (Mass. 2014) ("[We] are not confident . . . that a human nose can discern reliably the presence of a criminal amount of marijuana, as distinct from an amount subject only to a civil fine.").

possession of marijuana but that "she ha[d] consumed the marijuana and that's why she ha[d] the odor of marijuana on her person."[73]

Finally, we note that, even if the officers believed that Juliano was under the age of 18 when they arrested her, their purported suspicion that Juliano was then and there—that is, in the officers' presence—in possession of marijuana was, in our view, unreasonable. Here we hearken back to the vagueness of the description of the marijuana smell—was it raw or burnt?—as well as the State's admission at oral argument that the odor of marijuana emanating from Juliano was most likely caused by her consumption of marijuana at some indeterminate time preceding her encounter with the police.[74] Thus, the State seems to concede that the act of possession—again, a misdemeanor under the pre-2019 version of Section 4764—

---

[73] Oral Argument at 23:38–24:40, *Juliano v. State*, No. 320, 2019 (Del. June 16, 2021). This admission by the State was elicited by a question from this Court:

> THE COURT: [W]hat facts under the totality of the circumstances would lead an officer to believe that this sort of vaguely described odor of marijuana [,which] could have been on the clothing from previous . . . exposure, what would lead him to believe that because the odor of marijuana was coming from Juliano, she must be in possession of marijuana?

> THE STATE: Well, I think that's it . . . is that you look at probable cause for arrest and you have probable cause if you think the person is committing a crime, or will commit a crime in the future, or has committed a crime. And I think the focus would be that, since there's no evidence of actual marijuana being seen or joints or anything like that, that it *has to be that she has consumed the marijuana and that's why she has the odor of marijuana on her person.*

*Id.* (emphasis added).
[74] *Id.*

28

was not committed in the officer's presence such that a warrantless misdemeanor arrested was authorized.

## IV.   CONCLUSION

For the reasons set forth above, we conclude that the Family Court erroneously denied Juliano's motion to suppress. Because the evidence seized from Juliano (the United States currency, the marijuana, and the cocaine) was the fruit of the unlawful arrest, it should have been excluded from trial. And without that evidence, there was no factual basis to find beyond a reasonable doubt that Juliano committed the crimes charged. Therefore, the judgment of the Family Court is reversed and Juliano's adjudication of delinquency is vacated.

VAUGHN, Justice, dissenting:

The question before the trial court was whether the police had probable cause to arrest Juliano for possession, use or consumption of marijuana at the scene of the traffic stop. If they did not, no search greater than a *Terry* pat-down for weapons at the scene of the traffic stop was justified and the motion to suppress should have been granted. If they did, the discovery of drugs on Juliano's person at the police station was the valid product of a search incident to arrest and the motion was properly denied. I would find that the police did have probable cause to arrest Juliano for possession, use or consumption of marijuana while at the scene of the traffic stop.

The seatbelt violation gave the police the authority to make the traffic stop. I would find that Officer Porter's smell of marijuana emanating from the vehicle elevated the traffic stop to a valid *Terry* detention to investigate the smell of marijuana. If an occupant was less than 18 years of age, as Juliano turned out to be, possession, use or consumption of marijuana was unlawful by virtue of 16 *Del. C.* § 4764(b), which at the time prohibited any person less than 18 years of age from possessing, using or consuming marijuana. If the occupant was 18 years of age or older, the use or consumption of marijuana in a moving vehicle was unlawful by

30

virtue of 16 *Del. C.* § 4764(d), which prohibited any person 18 years of age or older from using or consuming marijuana in a moving vehicle.[75]

According to his testimony at the suppression hearing, when Officer Johnson arrived at the scene as back-up, Juliano was still seated in the vehicle. As he approached the passenger side of the vehicle where she was seated, he noticed an odor of marijuana. He had her exit the vehicle, took her into custody, and handcuffed her. Officer Barrett testified that after Juliano was out of the vehicle, and while he was escorting the driver to the back of the car, he "could smell marijuana very strong coming from [Juliano], um and then the other two [passengers]."[76] He also testified at trial that he smelled the strong odor of marijuana emanating from her within "20 seconds, if that" after she exited the vehicle.[77] Officer Johnson also testified that "each one of the defendants had a marijuana smell emanating off their person.[78]

I would find that Officer Barrett's detection of a very strong odor of marijuana emanating from Juliano, along with Officer Johnson's testimony, created probable

---

[75] Juliano was actually charged under 16 *Del. C.* § 4764(a). That section applied where a person less than 18 years of age possessed, used or consumed marijuana and there was an aggravating factor. The aggravating factor charged in her case was that the offense occurred in a vehicle. The presence of an aggravating factor elevated the offense from an unclassified misdemeanor to a Class B misdemeanor. A finding that she possessed, used or consumed marijuana would alone be sufficient to justify an adjudication of delinquency for violation of an unclassified misdemeanor. A finding that the possession, use or consumption occurred in a vehicle increased the level of the delinquency from an unclassified misdemeanor to a Class B misdemeanor. The Family Court found her delinquent of aggravated possession.

[76] App. to Supp. Opening Br. at A38.

[77] *Id*. at A209.

[78] *Id.* at A76.

31

cause to believe that she possessed, used or consumed marijuana, justifying her arrest at that time. A number of courts have found that where the smell of marijuana can be particularized, or localized, to a specific person, probable cause exists to arrest that person for possession of marijuana.[79] The smell must be more than the nearby presence of marijuana. Here, I think that Officer Barrett's specific testimony that he smelled a very strong odor of marijuana coming from Juliano after she had exited the vehicle, together with Officer Johnson's testimony that he also smelled marijuana emanating off of each of the defendants' person is sufficient to establish probable cause for Juliano's arrest. Although the case law normally involves an encounter between an officer and a single defendant, I think that Officer Barrett's testimony, coupled with the testimony of Officer Johnson, that Officer Barrett detected a strong odor of marijuana which he could particularize to Juliano was sufficient to establish probable cause for her arrest.

Johnson handcuffed Juliano after she got out of the vehicle. Whether he had handcuffed her by the time Officer Barrett detected the above-described very strong

---

[79] *United States v. Paige*, 870 F.3d 693, 700 (7th Cir. 2017) ("We agree with our sister courts that the odor of marijuana, if sufficiently localized to a specific person, provides probable cause to arrest that person for the crime of possession of marijuana.); *United States v. Jackson*, 682 Fed. Appx. 86, 88 (3rd Cir. 2017) (Case law within this Circuit and others has concluded that so long as the smell of marijuana can be particularized to a specific person or place, it is sufficient to establish probable cause.); *Caffe v. State*, 814 S.E.2d 386, 393 (Ga. 2018) (To have probable cause to arrest, additional factors must be present to show that a particular person is the source of the odor; that is, the arresting officer must have probable cause to believe that a particular person smells of marijuana).

odor of marijuana and he himself had detected the odor of marijuana emanating from Juliano seems to me to be unclear from the record. It would appear that they all occurred within seconds of each other. Under these circumstances, I would find that Juliano was lawfully arrested at the scene of the traffic stop.

The Majority finds, *sua sponte*, that Juliano's arrest without a warrant violated 11 *Del. C.* § 1904, which allows an officer to arrest a person for a misdemeanor committed "[i]n the officer's presence." Juliano has not made any argument based on this statute, either in the Family Court or this Court. Accordingly, I would find that the issue is waived. The State has not had a fair opportunity to address this issue. Since the issue has not been litigated, I do not claim to know exactly how the statute applies to the facts of this case. If the statute requires that the officer be consciously aware that he was observing Juliano's possession, use or consumption of marijuana while at the scene of the traffic stop, I guess it could be argued that the statute was violated because no officer observed Juliano to be in possession of or consuming marijuana at that time. On the other hand, Officer Barrett detected the very strong odor of marijuana coming from Juliano in his presence, and Officer Johnson detected the odor of marijuana coming from her person in his presence, and we know from the search at the police station that she was, in fact, in possession of marijuana the entire time she was in the presence of the officer from the beginning

of the traffic stop. In any event, I would simply find that the issue is waived because Juliano did not fairly present the issue in either the Family Court or this Court.[80]

The Majority also finds that the record does not support the conclusion that the officers knew Juliano was less than 18 years of age when they placed her under arrest. This issue is also raised *sua sponte*. The Majority engages in original fact finding on this point, and I find its fact finding to be not very convincing. Officer Barrett testified at the suppression hearing that he was familiar with her and was aware of her prior arrests and adjudications. He attempted to call her parents, which an officer would do only if dealing with a juvenile. Officer Johnson was asked to describe the bounds which applied to his search of a female as opposed to a search of a male at the scene of the traffic stop. He responded that "Um, it is a lot less as far as just making sure there's no weapons and contraband, um, not really go in-depth because it's a female, also a juvenile."[81] If anything, I think the record creates an indication, a fairly strong one, that Officers Barrett and Johnson were aware that Juliano was less than 18 years of age when she was arrested. I also think that any

---

[80] The Majority calls the reader's attention to the fact that one of the Justices asked the State at oral argument whether it took issue with the requirement that in order for an officer to make a warrantless arrest for a misdemeanor, the misdemeanor must be committed in the officer's presence. The State gave a responsive and unremarkable answer to the effect that the statute says what it says. This brief exchange does not alter the fact that Juliano waived the issue by not raising it in either Family Court or this Court.

[81] Appendix to Supp. Opening Br. at A76.

34

age-related issue has been waived. No such issue was fairly presented in either the Family Court or this Court.

For the foregoing reasons, I would affirm the judgment of the Family Court.